United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ZACHARY YATES,
Plaintiff,

v.

SONOMA COUNTY, et al.,
Defendants.

Case No. 23-cv-01812-HSG

**ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS**

Re: Dkt. Nos. 11, 25

Pending before the Court are the County Defendants'[1] and Legacy Long Distance International's motions to dismiss. *See* Dkt. Nos. 11, 25. The Court finds these matters appropriate for disposition without oral argument and the matters are deemed submitted. *See* Civil L.R. 7-1(b). For the reasons discussed below, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motions to dismiss.

## I. REQUEST FOR JUDICIAL NOTICE

In support of their motion to dismiss, the County Defendants filed a request for judicial notice regarding, *inter alia*, court records associated with Plaintiff's underlying criminal matters as well as administrative jail records. *See* Dkt. Nos. 12–13. Legacy joins in this request. *See* Dkt. No. 25 at 10–11.[2] Plaintiff opposes the request for judicial notice, arguing, in short, that "[t]here is no evidence of the circumstances under which any of these items were presented, whether [he] was given time to or actually read any of the documents, or whether he was bullied or tricked into

[1] The complaint names Sonoma County (the "County") and Sonoma County Sheriff Mark Essick ("Defendant Essick"), as well as Sonoma County Probation Officers Laura Consiglio, Brandon Bannister, and "DPO Chastain" (the "Probation Defendants"). *See* Dkt. No. 1 ("Compl.") at ¶¶ 5–8. For ease of reference, the Court refers to all of the Defendants associated with Sonoma County as the "County Defendants."

[2] All references to page numbers in filings are to the ECF pagination at the top of the document.

signing." Dkt. No. 24 at 3; *see also* Dkt. Nos. 24-1, 31-1; Dkt. No. 31 at 2–3 (objecting to Exhibit N, the jail custody advisements, because "the meaning of the face of the document is ambiguous and out of context").

Filings in other courts are the proper subject of judicial notice when directly related to the case, but only for the existence of assertions made in them, not for the truth of the matters asserted. *See Trigueros v. Adams*, 658 F.3d 983, 987 (9th Cir. 2011); *Lee v. City of Los Angeles*, 250 F.3d 668, 688–90 (9th Cir. 2001); *see also* Fed. R. Evid. 201(b). The Court therefore **GRANTS IN PART** the request for judicial notice as to those documents referenced below, but otherwise **DENIES AS MOOT** the request as to documents that the Court did not consider as part of this order.

## II. BACKGROUND

As with the related case brought by the bankruptcy trustee, the procedural background of this case is complicated, though largely undisputed. *See Hoffman v. Sonoma Cty. et al*., Case No. 22-05446-HSG (N.D. Cal.), Dkt. No. 37 ("*Hoffman* Order"). In December 2021, Plaintiff filed a Chapter 7 Bankruptcy in the United States Bankruptcy Court for the Northern District of California. *See In re Zachary Yates*, Case No. 21-10506-RLE (Bankr. N.D. Cal.), Dkt. No. 1. Timothy Hoffman was appointed as the trustee of the bankruptcy estate, and Stephen Olson was appointed as bankruptcy counsel for the trustee. *See id.*, Dkt. Nos. 20, 32. As relevant to this case, Plaintiff listed in his schedule of assets "[y]et to be filed contingent unliquidated and (likely) disputed legal claims re: . . . (d) jail call wiretapping." *Id.*, Dkt. No. 15 at 33.

Plaintiff was represented in the bankruptcy action by Stephen Kent Rose. According to the schedule of assets, Plaintiff had entered into an earlier "[a]ttorney contingency fee contract to prosecute [a] legal malpractice case" in Sonoma Superior Court with Mr. Rose. *Id.* at 24. Mr. Rose thus had a "[c]ontingent, unliquidated attorney lien on [the] legal malpractice lawsuit." *See id.* at 24, 33–34. As trustee, Mr. Hoffman requested that the bankruptcy court value Mr. Rose's secured claim against the estate as zero dollars, arguing that the contract between Plaintiff and Mr. Rose was unenforceable; the trustee did not assume the contract; Mr. Rose did not keep any time records for his services; and he did not meaningfully advance the malpractice lawsuit. *See id.*,

Dkt. No. 44. Mr. Rose objected. *See id.*, Dkt. No. 50.

Mr. Hoffman later appeared to reach an agreement with Mr. Rose and Plaintiff as to Mr. Rose's claim. *See id.*, Dkt. No. 65 ("Motion to Compromise"). As part of this motion, Mr. Rose agreed to accept $10,000 in full satisfaction of his claim. *See id.* at 6. Mr. Hoffman also agreed to abandon certain scheduled assets, including Plaintiff's claims for false imprisonment and for jail call wiretapping because Mr. Hoffman did "not believe it would be in the best interests of the estate for the Trustee to administer these claims, in light of the expense of litigation and the possibility the claims will not prevail." *Id.* at 7–8. Mr. Hoffman explained that he was concerned that the value of these claims was "greatly exaggerated," and would ultimately turn on Plaintiff's credibility as a witness. *Id.* at 8.

At the time of the Motion to Compromise, the parties appeared aware that Plaintiff might have difficulty pursuing these abandoned claims because of the applicable statutes of limitations. The parties therefore included the following provision in the Motion for Compromise:

> [T]he Trustee will allow Rose to prepare and file complaints, in the Trustee's name, after the Trustee and his counsel have reviewed [] the complaints and authorized the filing, regarding the scheduled litigation claims to be abandoned to the Debtor, *to enable the Debtor to obtain the benefit of the extension of the statute of limitations set forth in Section 108 of the Bankruptcy Code*.

*See In re Zachary Yates*, Dkt. No. 66, Ex. 1 at ¶ 4 (emphasis added); *see also* Dkt. No. 65 at 6.

On September 23, 2022, before the bankruptcy court approved the Motion to Compromise, Mr. Rose filed the complaint in the related matter purportedly on behalf of Mr. Hoffman as the bankruptcy trustee against the County Defendants and Legacy. *See Hoffman v. Sonoma Cty. et al.*, Dkt. No. 1. The complaint contended that on April 13, 2021, Plaintiff was released from a Sonoma County jail, and under the conditions of his post release community supervision, he had to report to the Sonoma County Probation Department within one day of his release. *Id.* at ¶¶ 17–20. The next day, on April 14, a no-bail arrest warrant was issued claiming that Plaintiff had failed to report as required. *Id.* at ¶ 21. According to the complaint, this was premature, and Plaintiff ultimately reported to probation the afternoon of April 14. *See id.* at ¶ 22. Nevertheless, Plaintiff was arrested for failing to report and was imprisoned for 10 days as a result. *See id.* at

¶¶ 22–23. The complaint further alleged that while incarcerated, the County Defendants and Legacy, which operated the inmate telephone system in Sonoma County jails, also improperly recorded calls between Plaintiff and his attorney. *See id.* at ¶¶ 10, 24–27. The complaint alleged violations of Plaintiff's Fourth, Sixth, and Fourteenth Amendment rights, as well as related state laws. *See id.* at ¶¶ 28–60. On September 26, 2022, the bankruptcy court granted the Motion to Compromise, and Mr. Hoffman formally abandoned the legal claims at issue in the related case. *See In re Zachary Yates*, Dkt. No. 73.

On April 13, 2023, Plaintiff filed the complaint in this case, which contains allegations that are nearly identical to those pled in the *Hoffman* complaint. *See* Compl. at ¶¶ 5–8, 10, 17–60.4. A few days later, in light of Mr. Hoffman's abandonment of the claims and his lack of standing, the Court dismissed the *Hoffman* complaint without leave to amend and denied Mr. Hoffman's motion to substitute Mr. Yates as the plaintiff under Federal Rule of Civil Procedure 25(c). Dkt. No. 37. As the Court explained,

> It is obvious from the Motion to Compromise and Mr. Hoffman's briefing in this case that the filing of this case, and the abandonment of the false imprisonment and jail cell call claims, were intended to extend the relevant statutes of limitations for Mr. Yates. As early as August 2022, Mr. Hoffman indicated his belief that the claims at issue in this case were meritless and should not be pursued by the bankruptcy estate. Yet Mr. Rose filed this case anyway on behalf of the trustee and now argues that Mr. Yates should receive the benefit of an extension of any statute of limitations under 11 U.S.C. § 108(a)(2). *See* Dkt. No. 17 at 3–4; Dkt. No. 35 at 4–5; *see also* Dkt. No. 32-1 at ¶ 7; Dkt. No. 34 at 1–2. Rule 25 is a procedural vehicle, and is not intended to change the substantive rights of the parties. *Cf. Copelan v. Techtronics Indus. Co.*, 95 F. Supp. 3d 1230, 1235 (S.D. Cal. 2015) (allowing substitution of bankruptcy trustee because "the change is merely formal"). The Court declines to credit this transparent gamesmanship.

*Id.* at 7.

## III. MOTIONS TO DISMISS

### A. Legal Standard

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be

granted under Rule 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008) (citation omitted). To survive a Rule 12(b)(6) motion, a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nevertheless, courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

"A claim may be dismissed under Rule 12(b)(6) on the ground that it is barred by the applicable statute of limitations only when the running of the statute is apparent on the face of the complaint." *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010) (internal quotation marks and citation omitted). "[A] complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim." *Id.* (citation omitted).

**B. Discussion**

**1. Claims Related to the Flash Incarceration (Claims One and Two)**

Plaintiff raises two constitutional challenges under § 1983 regarding his flash incarceration, alleging that it: (1) constituted an unreasonable search and seizure (Claim One), and (2) violated his rights to due process (Claim Two). *See* Compl. at ¶¶ 28–33. "'[F]lash incarceration' is a period of detention in a city or county jail due to a violation of an offender's conditions of postrelease supervision," the length of which "can range between one and 10 consecutive days." Cal. Penal Code § 3454(c). California law provides that a person subject to

postrelease community supervision ("PRCS") "shall waive any right to a court hearing" before imposition of a period of "flash incarceration" in a city or county jail "for any violation of his or her postrelease supervision conditions." *Id.* § 3453(q).

"An incorrect arrest does not provide grounds for a claim of deprivation of liberty without due process if the arrest was made pursuant to a valid warrant based upon probable cause." *Bretz v. Kelman*, 773 F.2d 1026, 1030–31 (9th Cir. 1985) (citation omitted). While innocence or acquittal after trial "may be relevant to a tort claim for false imprisonment, it is largely irrelevant to a claim of deprivation of liberty without due process of the law." *Id.* (citation omitted). "Nevertheless, if an arrest is made in bad faith, there may be a cause of action under § 1983 as an illegal, unconstitutional arrest." *Id.* (citations omitted).

Here, the County Defendants argue that the existence of a facially valid warrant fatally undermines Plaintiff's claims. *See* Dkt. No. 11 at 17–19. They also argue that Plaintiff was afforded prompt judicial review following his detention, which constituted adequate due process. *See id.* at 19–21.[3] However, taking the allegations in the complaint as true, as the Court must at the pleading stage, Plaintiff has adequately alleged the Fourth and Fourteenth Amendment claims. Plaintiff alleges that he reported to the Probation Department on April 14, 2021 in accordance with the terms of his PRCS and an order issued by the Superior Court one day prior. *See* Compl. at ¶¶ 20–22. He contends that upon timely reporting, the Probation Defendants caused Defendant Essick to "unlawfully, falsely, summarily, and extrajudicially imprison" him. *Id.* at ¶¶ 22–23. Plaintiff also contests the validity of the warrant, contending it was based on false statements by some of the County Defendants, such that there was no lawful basis for his seizure and imprisonment. *See id.* at ¶¶ 22–23, 28. Plaintiff further alleges that his seizure and incarceration were "malicious, oppressive, wanton, and despicable," and that he was detained for ten days "with no judicial process whatsoever." *Id.* at ¶¶ 30–31.

[3] In making these arguments, the County Defendants rely on a number of documents raised in their request for judicial notice. *See* Dkt. No. 11 at 16–21. In doing so, they essentially ask the Court to assume the truth of the matters asserted in these documents, which is not appropriate at the motion to dismiss stage. *See Lee*, 250 F.3d at 688–90 (holding that district court erred in granting motion to dismiss § 1983 claims by relying on extrinsic evidence and by taking judicial notice of disputed matters of fact to support its ruling).

Whether the County Defendants acted pursuant to a valid arrest warrant, whether they acted in bad faith, and whether Plaintiff was deprived of due process are in dispute. Courts have declined to resolve analogous issues at the motion to dismiss stage. *See, e.g., Lee*, 250 F.3d at 684–85 ("In such circumstances, a due process violation may have occurred. Certainly at the pleading stage we cannot conclude otherwise.") (citations omitted); *Alvarez-Orellana v. City of Antioch*, Case No. 12–CV–04693 JSC, 2013 WL 428622, at *5 (N.D. Cal. Feb. 1, 2013) (finding allegation that plaintiff's arrest violated the Fourth and Fourteenth Amendments to be sufficiently pled against some defendants, where the only justification for arrest and 14-day detention was a warrant alleged to be invalid); *Harvey v. City of Oakland*, Case No. C07-01681 MJJ, 2007 WL 3035529, at *3 (N.D. Cal. Oct. 16, 2007) (denying motion to dismiss where the plaintiff disputed the validity of the warrant and alleged the defendants' actions were "willful, wanton, malicious, oppressive, and in bad faith").

However, the first and second claims of the complaint fail to plead any facts (as opposed to arguments or conclusions) with respect to Defendant Essick, beyond alleging that he complied with the purportedly unlawful flash incarceration order. *See* Compl. at ¶¶ 23, 28, 30–31, 33. These "threadbare recitals of a cause of action's elements, supported by mere conclusory statements," *Iqbal*, 556 U.S. at 663, are insufficient to state a claim against Defendant Essick. *See Alvarez-Orellana*, 2013 WL 428622, at *5 (dismissing with leave to amend conclusory claims that defendant police chief violated plaintiff's Fourth Amendment rights in connection with allegedly unlawful arrest). Accordingly, the Court **GRANTS** the motion to dismiss Plaintiff's first and second claims against Defendant Essick with leave to amend. Because the disputed factual matters relevant to Plaintiff's other allegations cannot be resolved at the pleading stage, the Court **DENIES** the County Defendants' motion to dismiss as to the remaining Defendants.

### 2. State Law Claims (Claims Three and Five)

The complaint also alleges two state law claims: (1) false arrest and imprisonment (Claim Three), and (2) unlawful jail call wiretapping under California Penal Code Sections 636 and 637.2 (Claim Five). *See* Compl. at ¶¶ 34–38, 50–53. Defendants argue that because Plaintiff filed his lawsuit after the expiration of the one-year statute of limitations in California Code of Civil

Procedure section 340, these two state law claims must be dismissed. *See* Dkt. No. 11 at 14–15; Dkt. No. 25 at 23–25. The Court agrees.

The statute of limitations for false imprisonment is one year. Cal. Civ. Proc. Code § 340(c). "False arrest and false imprisonment overlap; the former is a species of the latter." *Wallace v. Kato*, 549 U.S. 384, 388 (2007); *see also Blankenhorn v. City of Orange*, 485 F.3d 463, 486 n.15 (9th Cir. 2007) (citing *Collins v. City and Cty. of San Francisco*, 50 Cal. App. 3d 671, 673 (1975) ("False arrest is but one way of committing a false imprisonment.")); *Bolbol v. City of Daly City*, Case Nos. C–09–1944 EMC, C–09–5318 EMC, 2011 WL 3156866, at *3 (N.D. Cal. July 26, 2011) (citing *Milliken v. City of South Pasadena*, 96 Cal. App. 3d 834, 840 (1979) (recognizing a one-year statute of limitations for a claim of false arrest and imprisonment under § 340)). The "[l]imitations [period] begin[s] to run against an action for false imprisonment when the alleged false imprisonment ends." *Wallace*, 549 U.S. at 389 (citations omitted). "Reflective of the fact that false imprisonment consists of detention without legal process, a false imprisonment ends once the victim becomes held *pursuant to such process*—when, for example, he is bound over by a magistrate judge or arraigned on charges." *Id*. (emphasis in original). The statute of limitations for a Section 637.2 civil action is also one year, and does not begin to run "until the plaintiff discovers or should have discovered his injury." *NEI Contracting and Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc*., No. 3:12–CV–01685–BAS(JLB), 2015 WL 1346110, at *4 (S.D. Cal. Mar. 24, 2015) (citing *Quesada v. Banc of Am. Inv. Servs., Inc*., Case No. C–11–1703 EMC, 2012 WL 34228, at *1 (N.D. Cal. Jan. 6, 2012); Cal. Civ. Proc. Code § 340(a)).[4]

Plaintiff's claim of false arrest and imprisonment is premised on his 10-day "flash" incarceration, which he alleges ended on April 23, 2021 when he was released from custody. *See* Compl. at ¶¶ 22–24. Accordingly, at the latest, he had until April 23, 2022 to file this claim. And

[4] Citing *Montalti v. Catanzariti*, 191 Cal. App. 3d 96, 99–100 (1987), Plaintiff contends that the three-year statute of limitations in California Code of Civil Procedure Section 338(a) applies to his fifth claim. *See* Dkt. No. 24 at 8–9; Dkt. No. 31 at 8. However, *Montalti* directly held that the one-year statute of limitations under § 340 applied to a cause of action brought under § 637.2. 191 Cal. App. 3d at 98. Plaintiff's argument that the California Court of Appeal erred in *Montalti*, *see* Dkt. No. 31 at 8, is not persuasive, and the Court has no reason to conclude that the California Supreme Court would reach a different conclusion if confronted with this question.



United States District Court
Northern District of California

Plaintiff claims his phone calls were recorded between July 27, 2021, and August 23, 2021.[5] *Id.* at ¶¶ 26–26.1. In the underlying criminal action, the prosecutor represented on September 2, 2021 that Plaintiff's phone calls to his attorney from jail were not blocked as privileged and had been recorded, putting Plaintiff on at least inquiry notice as to that issue on that date. *See* Dkt. No. 13 at 40–42 (Ex. O) (transcript of proceedings on September 2, 2021). At the latest, Plaintiff had until September 2, 2022 to file his wiretapping claim. He filed the complaint in this case on April 13, 2023. *See* Compl. His two state law claims are therefore untimely and facially barred by the statute of limitations.

Despite his tardy filing, Plaintiff urges that dismissal of these claims is improper because, as the debtor in a bankruptcy proceeding, he should receive the benefit of an extension of any statute of limitations under 11 U.S.C. § 108(a)(2). *See* Compl. at ¶ 16; Dkt. No. 24 at 8–9; Dkt. No. 31 at 8–9. The Court squarely rejected virtually identical arguments made against the same Defendants in denying the trustee's request to substitute Mr. Yates as plaintiff in the *Hoffman* matter:

> []Mr. Hoffman has not identified any authority supporting his argument that Mr. Yates can benefit from § 108(a)(2)—the only reason given for substituting Mr. Yates in this case. Mr. Hoffman and Mr. Yates appear to argue that it would be unjust if the Court does not allow Mr. Yates's substitution into this case, and the Court would somehow be interfering with a private agreement among the parties. *See* Dkt. No. 35 at 4–5, 8. But it is not clear that Messrs. Yates, Rose, and Hoffman had the power to enter into this arrangement at all[.]
>
> Section 108(a)(2) does not extend the benefit to the debtor. It explicitly allows trustees to commence actions two years after the commencement of the bankruptcy proceeding. *See* 11 U.S.C. § 108(a)(2). Courts have explained that § 108 "was enacted to benefit the creditors of the bankrupt debtor, rather than the mere debtor itself." *See Natco Indus., Inc. v. Fed. Ins. Co.*, 69 B.R. 418, 419–20 (S.D.N.Y. 1987) (collecting cases); *Cunningham v. Healthco, Inc.*, 824 F.2d 1448, 1460 (5th Cir. 1987) ("While a debtor-in-possession is entitled to § 108's tolling period, however, a debtor is not."). Here, any recovery from Mr. Yates's false imprisonment and jail cell wiretapping claims would only benefit Mr. Yates and not any creditors. If such strategies were permitted, this could "discourage debtors from bringing timely actions . . . ." *Natco*, 69 B.R. at 420. Neither Mr. Hoffman nor Mr. Yates explains why § 108 should nevertheless apply now that Mr. Hoffman has abandoned these claims. Despite their urging, this is not "an undeserved windfall to

[5] According to the complaint, Plaintiff was back in custody starting on July 23, 2021. *See* Compl. at ¶ 24.



United States District Court
Northern District of California

> defendants," . . . but rather a straightforward application of existing law.
>
> Moreover, the Motion to Compromise among Messrs. Hoffman, Yates, and Rose does not just affect their rights, but also the rights of others who are not a party to this arrangement. Mr. Yates is explicitly attempting to extend the statute of limitations for claims against other entities—namely the Defendants in this case—who were not parties to the Motion to Compromise. Mr. Yates does not cite, and the Court is not aware, of any authority that would permit a person to unilaterally extend the statute of limitations in this way.
>
> The Court will not sanction such an arrangement by allowing Mr. Yates to continue litigating this case by way of an obvious effort to evade the statute of limitations . . . .

*Hoffman Order* at 8–9. In the absence of binding authority compelling a contrary conclusion, the Court finds that there is no basis to revisit its prior ruling. And Plaintiff does not assert any other basis on which the applicable statutes of limitations should be tolled.

Accordingly, the Court **GRANTS** Defendants' motions to dismiss Plaintiff's third and fifth claims.[6] While it appears unlikely that Plaintiff could plead any facts establishing the timeliness of these claims given what he has already pled, because of the standard applicable on a motion to dismiss, the Court will grant one final opportunity to amend. *Von Saher*, 592 F.3d at 969.

### 3. Claim Regarding the Privileged Phone Calls (Claim Four)

Plaintiff next contends that the recording of several allegedly attorney-client privileged telephone conversations between himself and Mr. Rose while he was incarcerated gives rise to § 1983 liability under the Fourth and Sixth Amendments (Claim Four). *See* Compl. at ¶¶ 24–27.1, 40–44.[7]

"The Fourth Amendment is not triggered unless the state intrudes into an area in which there is a constitutionally protected reasonable expectation of privacy." *United States v. Van Poyck*, 77 F.3d 285, 290 (9th Cir. 1996) (internal quotation marks and citations omitted). "Such a

---

[6] Because the Court finds that that the state law claims are time-barred, it does not reach Defendants' arguments that these claims should be dismissed for failure to state a claim. *See* Dkt. No. 11 at 21, 26–28; Dkt. No. 25 at 24–25.

[7] Plaintiff names Legacy in his fourth, fifth, and sixth claims. *See* Compl. at ¶¶ 40–44, 50–53, 60.4. However, it appears his primary contentions are generally directed to the County Defendants.

'constitutionally protected reasonable expectation of privacy' exists only if (1) the defendant has an 'actual subjective expectation of privacy' in the place searched and (2) society is prepared to recognize that expectation." *Id*. (citation omitted). Applying this standard in the context of routinely recorded prison calls, the Ninth Circuit held that "any expectation of privacy in outbound calls from prison is not objectively reasonable and that the Fourth Amendment is therefore not triggered by the routine taping of such calls." *Id*. at 291. The court excepted from its analysis "properly placed" telephone calls between a defendant and his attorney, noting that the jail where defendant was detained did not record or monitor such calls as a matter of policy. *See id*. at n.9. The court further concluded that Van Poyck's consent to the taping of the phone calls vitiated his Fourth Amendment claim, such that it independently failed on that ground. *Id*. at 291.

In addition, "[i]n order to show that the government's alleged intrusion into the attorney-client relationship amounted to a violation of the Sixth Amendment, a defendant must show, at a minimum, that the intrusion was purposeful, that there was communication of defense strategy to the prosecution, or that the intrusion resulted in tainted evidence." *United States v. Fernandez*, 388 F.3d 1199, 1240 (9th Cir. 2004) (citations and emphasis omitted). Such a deliberate interference "violates the Sixth Amendment right to counsel if it substantially prejudices the criminal defendant." *Williams v. Woodford*, 384 F.3d 567, 584–85 (9th Cir. 2004) (citations omitted). "Substantial prejudice results from the introduction of evidence gained through the interference against the defendant at trial, from the prosecution's use of confidential information pertaining to defense plans and strategy, and from other actions designed to give the prosecution an unfair advantage at trial." *Id*. at 585.

Here, the parties dispute whether Plaintiff consented to the taping of his phone calls, whether his calls were "properly placed" so as to fall outside of the rule articulated by the Ninth Circuit in *Van Poyck*, and whether he was prejudiced by disclosure of any information purportedly derived from these phone calls with his attorney. *Compare* Dkt. No. 11 at 22–26; Dkt. No. 25 at 18–23, *with* Dkt. No. 24 at 6–7; Dkt. No. 31 at 3–4. Both motions to dismiss again rely on documents proffered with the request for judicial notice, and again it would be improper for the Court to assume the truth of the matters asserted in those documents to contradict Plaintiff's

allegations. *See Lee*, 250 F.3d at 688–90. Defendants also cite the Ninth Circuit's recent decision in *Evans v. Skolnik*, 997 F.3d 1060 (9th Cir. 2021). *See* Dkt. No. 11 at 22–26; Dkt. No. 25 at 18–23. But that case was decided on qualified immunity grounds at the summary judgment stage based on the Court's finding that the right Plaintiff asserted was not clearly established. 997 F.3d at 1066-1069. Because the factual issues in dispute are not susceptible to resolution at the pleading stage, the Court **DENIES** the motion to dismiss this claim as to all Defendants other than Defendant Essick.[8]

Plaintiff's only allegation against Defendant Essick as to this claim is that he participated in the purportedly unlawful recording of the jail cell calls, *see* Compl. at ¶¶ 25–26.3, 40–44, but there are no facts supporting a reasonable inference that he did so. *See Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002) ("In order for a person acting under color of law to be liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation: there is no respondeat superior liability under section 1983."). The Court thus **GRANTS** the motions to dismiss as to Defendant Essick only, with leave to amend.

**4. *Monell* Claim (Claim Six)**

Finally, Plaintiff alleges municipal liability under *Monell v. N.Y. City Dep't of Social Servs.*, 436 U.S. 658 (1978), against the County Defendants for violating his constitutional rights (Claim Six). *See* Compl. at ¶¶ 60–60.3. He also adds a purported *Monell* claim against Legacy. *Id.* at ¶ 60.4.

**a. The County Defendants**

"[A] municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691. To state a claim for municipal liability under *Monell*, "a plaintiff must allege either that (1) 'a particular municipal action *itself* violates federal law, or directs an employee to do so'; or (2) the municipality, through inaction, failed to implement adequate policies and procedures to safeguard its community members' federally protected rights." *Hyun*

[8] Relatedly, Defendants argue that Plaintiff's federal wiretapping claim should be dismissed, *inter alia*, because he consented to the recording of his phone calls. *See* Dkt. No. 11 at 25–26; Dkt. No. 25 at 22–23. For the same reasons, the Court **DENIES** the motions to dismiss on this ground.

*Ju Park v. City and Cty. of Honolulu*, 952 F.3d 1136, 1141 (9th Cir. 2020) (citations omitted) (emphasis in original). "When . . . a plaintiff pursues liability based on a failure to act, she must allege that the municipality exhibited deliberate indifference to the violation of her federally protected rights." *Id*. (citation omitted). At the pleading stage, a plaintiff's *Monell* claim "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *AE ex rel. Hernandez v. Cty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (citation omitted).

Here, Plaintiff alleges that his experience—the 10-day flash incarceration—is indicative of the County's official policy, practice, and custom of failing to train its officers, resulting in the unlawful arrest and incarceration of "many victims." Compl. at ¶¶ 60–60.3. He also claims that the County Defendants, at all relevant times, were well aware of this practice but nonetheless were deliberately indifferent to it. *See id*. at ¶¶ 60.1–60.2. "These conclusory allegations, however, do not supply underlying facts to establish that the alleged conduct even occurred on more than one occasion," or that the County or authorized policymakers were aware of, or had constructive knowledge of, any unconstitutional conduct. *Freeman v. Rohnert Park Dep't of Pub. Safety*, Case No. 18-cv-07661-HSG, 2019 WL 4082852, at *6 (N.D. Cal. Aug. 29, 2019). "This is not enough to survive a motion to dismiss." *Id.*

Similarly, Plaintiff sets forth no plausible factual allegations supporting an inference that Defendant Essick personally did anything other than comply with a court order as the County sheriff. *See* Compl. at ¶¶ 23, 28, 30–31, 33. That is inadequate. *See Jones*, 297 F.3d at 934. Accordingly, Plaintiff fails to state a *Monell* claim against the County Defendants.

**b. Legacy**

Plaintiff's *Monell* claim against Legacy is similarly not cognizable. To make out a claim under *Monell* against Legacy, a private entity, Plaintiff must show that (1) Legacy "acted under color of state law," and (2) "if a constitutional violation occurred, the violation was caused by" Legacy's official policy or custom. *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1139 (9th Cir. 2012).

First, the complaint lacks any facts plausibly suggesting that Legacy acted under color of

state law. "It is generally presumed that private individuals and entities do not act 'under color of state law' within the meaning of § 1983." *Rabieh v. Paragon Sys. Inc.*, 316 F. Supp. 3d 1103, 1109 (N.D. Cal. 2018) (citations omitted). "Under § 1983, a claim may lie against a private party who is a willful participant in a joint action with the State or its agents. Private persons, jointly engaged with state officials in the challenged action, are acting under color of law for purposes of § 1983 actions." *Dietrich v. John Ascuaga's Nugget*, 548 F.3d 892, 899–900 (9th Cir. 2008) (internal quotation marks and citations omitted). "However, a bare allegation of such joint action will not overcome a motion to dismiss; the plaintiff must allege facts tending to show that [Defendants] acted under color of state law or authority." *Id.* (internal quotation marks and citations omitted).

Here, Plaintiff's bare, conclusory allegation that Legacy and the County Defendants "intentionally intercepted, recorded, and disclosed the contents" of the outgoing jail calls and were deliberately indifferent to the likelihood that those calls contained privileged attorney-client communications, Compl. at ¶ 60.4, does not plausibly plead that Legacy acted under color of state law or authority. *See, e.g.*, *Jackson v. City of Inglewood*, Case No. CV 07-05311 TJH(AJW), 2009 WL 699948, at *4–5 (C.D. Cal. Mar. 12, 2009) (granting motion to dismiss where the plaintiff failed to plausibly allege any facts supporting his bare allegation that the business entity defendants acted under state law).

Second, Plaintiff fails to allege facts sufficient to plausibly plead that any constitutional deprivation occurred as a result of Legacy's custom or policy. Importantly, he sets forth no factual allegations supporting the inference that his injuries resulted from any specified policy or custom of Legacy. *See Rabieh*, 316 F. Supp. 3d at 1112 (granting motion to dismiss where the plaintiff made no allegations that his injuries resulted from the private entity's polices or customs). Thus, Plaintiff fails to state a *Monell* claim against Legacy.

Because Plaintiff fails to plausibly plead a *Monell* claim against any of the Defendants, the Court **GRANTS** the motions to dismiss as to Plaintiff's sixth claim with leave to amend.

## IV. CONCLUSION

Defendants' motions to dismiss are **GRANTED** with leave to amend as to Claims Three,

Five, and Six. *See* Dkt. Nos. 11, 25. The motions are **DENIED** as to Claims One, Two, and Four, except for the allegations against Defendant Essick, as to which the motions are **GRANTED** with leave to amend. *Id*. While the Court has significant skepticism that some of the identified pleading flaws can be overcome given the circumstances here, it cannot say definitively that amendment would be futile. The claims are thus dismissed with leave to amend. Plaintiff may file an amended complaint within 21 days of the date of this order, but he may not add any new claims or defendants.

**IT IS SO ORDERED.**

Dated: 3/25/2024

Haywood S. Gilliam, Jr.
HAYWOOD S. GILLIAM, JR.
United States District Judge